*510 MR. JUSTICE MORRISON,
dissenting:
I respectfully dissent.
I concur in that portion of the majority opinion which affirms the cause of action and the award of punitive damages. There is substantial credible evidence from which the trial court could have found malice and upon which the trial court could have made an award of $100,000 in punitive damages by way of example.
I dissent from the majority in affirming the award of $100,000 in compensatory damage. In my opinion the record does not show actual damages which could conceivably support the compensatory award made by the trial court.
The record of the default proceedings held in the trial court shows the following testimony bearing upon compensatory damages.
ROGER WIMMER,- ABSTRACTOR
“Q. Now do you have an opinion, in your capacity as an abstractor, as to whether or not such a lien would be a cloud on the title to the Johnson property?
“A. Yes I do.
“Q. And what is your opinion?
“A. In my opinion it would definitely put a cloud on the title. ii
“THE COURT: And to a prospective purchaser that would appear to be a big question mark, wouldn’t it?
“A. Yes.”
RON JOHNSON, PLAINTIFF
“Q. Now these liens that have been filed by Mr. Murray, how has that affected you?
“A. I was very angry to begin with, and I am still a little put out about it, and I think a lot of people knew about it long before I did, that these liens had been filed, and there has been a lot of ribbing about it, and people still kind of *511 look at you with such a jaundice eye and ‘Well if you are so innocent, what are you doing in Court?’ or ‘Why did this guy file this lien on you?,’ and I think the biggest problem is the drawn out explanation that has to take place in order to hopefully satisfy your friends that you really haven’t done anything wrong.”
MARILEE JOHNSON, PLAINTIFF
“Q. Mrs. Johnson, how has this matter affected you?
“A. I think it has been very embarrassing.
“Q. In what ways?
“A. Well, sometimes my husband talks about finding another job — or maybe transferring and if we were to move, we would have problems trying to sell our property for one thing and the idea of somebody controlling your bank account is very upsetting, and it would be very hard for us to manage things that way; I think the whole thing is terrible and I have been very annoyed when I heard that a lien was put on our property of that kind, because I didn’t know that anyone could do that.”
This is the extent of the testimony bearing upon damages to the plaintiffs. The majority opinion states:
“At the hearing for damages, a licensed abstractor testified that the imposition of the purported lien cast a cloud on the title of the real property of the Johnsons which would require at least the expense of removing the same and that the market value of the Johnson property was thereby reduced.”
I find no support in the record to show a diminution in the market value of the Johnson property. Furthermore, there is no evidence that the Johnson property was ever offered for sale during the time in question. With the exception of testimony regarding plaintiff’s embarrassment and anger the only evidence showing loss to the plaintiffs is the time that plaintiffs personally spent in attempting to secure release of the liens.
The conduct of the defendant is inflammatory. In my *512 opinion this conduct led to an award based upon passion and prejudice. The following statements by plaintiffs’ counsel and by the court are taken from the final remarks which appear in the transcript.
MR. SIMONTON:
“. . .1 believe we have shown that the title of their property have been slandered and I think it would be just to award one million fifty thousand seven dollars which we have requested, but I don’t know how realistic that is; I have nothing at this time to show what his worth is because he didn’t appear, but when you consider that this was certainly done maliciously after we offered to forget the whole thing in December and the response was that things had to be done on his terms or not at all, and it is obvious that this was done maliciously, it has caused the Plaintiffs a great deal of concern, anguish, time and embarrassment and to punish this defendant and others like him, I would like to see a judgment of at least fifty thousand dollars, Your Honor.
“THE COURT: Well I think it might be unrealistic; I think the conduct and all its particulars, that he slandered the title and liabled and accused people of crimes that is liable per se. There is no question in my mind that he should be punished in the way of exemplary damages. I think it might be more realistic to find damages in the amount of $100,000.00 and punitive damages in the amount of $100,000.00;. . .”
The court further awarded $1500 in attorney’s fees.
A fair summary of the above quoted remarks of counsel for plaintiff show that he sought a total award of $50,000 primarily in the form of punitive damages. The court rejected request of plaintiffs counsel and awarded $200,000. The $100,000.00 awarded for punitive damages can be supported as within the trial court’s discretion based upon the extremely vexatious nature of the defendant’s conduct. However, I can find no evidence in the record to support an *513 award of $100,000.00 in compensatory damage.
Rather than remand this case for a trial on compensatory damages I would enter a remittitur allowing plaintiff $5,000 in compensatory damages for mental and emotional distress and affirm the balance.